UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES RAYNOR, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | 3:24cv1270 (KAD) |
| | : | |
| LIEUTENANT TRUMELL et al., | : | |
| *Defendants*. | : | |

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

The plaintiff, James Raynor, a sentenced prisoner in the custody of the Connecticut

Department of Correction ("DOC"),[1] housed at Cheshire Correctional Institution ("Cheshire"),

filed this complaint pursuant to 42 U.S.C. § 1983 seeking compensatory and punitive damages

against five DOC employes who work at Garner Correctional Institution: Lieutenant Trumell,

Unit Manager Verrastro, Correction Officer Devost, Correction Officer Rickett, and Counselor

Arnold.[2] Doc. #1. Plaintiff alleges violation of his rights under the First, Fourth, Fifth, Eighth

and Fourteenth Amendments under the United States Constitution.[3]

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). Publicly available information on the DOC website shows that Plaintiff was sentenced in 2015 to a term of incarceration that has not yet expired. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=318905.

[2] Plaintiff does has specify whether he sues Defendants in their individual or official capacities. But as he seeks only damages, the Complaint is construed as bringing only individual capacity claims. If it was Plaintiff's intention to assert official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

[3] Plaintiff asserts claims under state law in this action. *See* Doc. #1 at 27 (¶ 2). The court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the court would decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367. On the other hand, if there

Upon initial review pursuant to 28 U.S.C. § 1915A, some of Plaintiff's claims for damages may proceed.

## I.    ALLEGATIONS

Accepted as true for purposes of initial review, Plaintiff alleges as follows. On May 7, 2024, Plaintiff was scheduled to have a non-contact video visit. Doc. #1 at 9 (¶ 1). Plaintiff walked through a secluded room and passed through metal detectors with Officer Devost, who was assigned to the secure visiting area. *Id.* Officer Devost let him into the visiting room but immediately harassed Plaintiff, asking whether Plaintiff was going to give him any trouble. *Id.* (¶¶ 2-3). Plaintiff questioned what Officer Devost meant by his question. *Id.* (¶ 5). Before he even had a chance to log onto the computer for his video visit with his family, Plaintiff experienced mental suffering and emotional anguish due to Officer Devost's "negative social behaviors." *Id.* (¶ 6). Devost then explained that he would conduct a strip cavity search after Plaintiff completed his video visit. *Id.* at 10 (¶ 7).

Plaintiff was confused about why Officer Devost acted to antagonize him and wanted to conduct a cavity search after a non-contact visit. *Id.* (¶ 8). He believed that Devost did not understand the DOC policy for strip searches relevant to video visits. *Id.* (¶ 9). He started to explain that Administrative Directive 6.7 provided for strip searches to be conducted at the conclusion of contact visits or if there was suspicion that an inmate was concealing contraband.

---

are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment.

*Id.* (¶¶ 9-10). Plaintiff and another inmate were the only inmates in the open general area of the visiting room at this time. *Id.* (¶ 11). The other inmate was in a secure visiting room with his attorney. *Id.*

Officer Devost laughed at Plaintiff and stated that he should be aware of Devost's reputation. *Id.* (¶ 12). Devost indicated that he would strip search Plaintiff regardless of any prison rule or directive and told Plaintiff to log onto the computer. *Id.* at 11 (¶ 14). Plaintiff requested him to call a supervisor. *Id.* (¶ 15).

During his video visit, Plaintiff experienced uneasiness and negative emotions resulting from his interaction with Officer Devost. *Id.* (¶ 16). After his visit, he entered the secluded room with the metal detector. *Id.* (¶ 17). Officer Devost subjected Plaintiff to a pat search and then instructed Plaintiff to pass through the metal detector. *Id.* (¶ 18). Plaintiff complied with this order, grabbed his possessions and headed toward the door so that Officer Devost could let him out. *Id.* Officer Devost did not, however, try to let Plaintiff out of the secluded room. *Id.* Instead, Officer Devost ordered Plaintiff to remove his clothing. *Id.* at 12 (¶ 19). When Plaintiff questioned the need for his strip search, Officer Devost told him to strip or he would call the lieutenant. *Id.* (¶ 22). Plaintiff refused to take his clothing off and told him to call a captain or warden. *Id.*

Defendant Devost summoned Officer Rickett, his partner, who tried to convince Plaintiff that they were following policy and doing their jobs. *Id.* at 13 (¶ 23). Plaintiff requested to speak with the shift commander and captain. *Id.* (¶¶ 24-25).

Lieutenant Trumell and Alpha Unit Manager Verrastro later arrived at the entrance to the secluded room. *Id.* at 14 (¶ 26). Plaintiff has pending grievances against Verrastro. *Id.* at ¶¶ 27-28.

Both Trumell and Verrastro immediately stared at Plaintiff. *Id.* (¶ 29). Unit Manager Verrastro stood in the doorway with Defendants Rickett and Devost, and Lieutenant Trumell entered the room. *Id.* Plaintiff claims Trumell accused him of hostility so that Defendants could physically restrain or spray him with a chemical agent. *Id.* (¶ 30).

Plaintiff again explained that a strip search was not warranted after an inmate's video visit according to the provisions for strip searches under Directive 6.7. *Id.* at 15 (¶ 32). Trumell cut Plaintiff's explanation short by yelling at him. *Id.* He stated that Plaintiff's strip search had already been determined before he went to the visiting room and that Plaintiff would be sent to segregation if he refused to comply. *Id.* (¶ 33). Plaintiff inquired why he was being threatened with segregation and abuse after a video visit. *Id.* (¶ 35).

Unit Manager Verrastro asked Plaintiff in an aggressive tone whether he was refusing to strip on his own. *Id.* (¶ 36). She spoke over him whenever he tried to respond. *Id.*

Plaintiff told Lieutenant Trumell that the DOC Commissioner was the only individual who could change the prison policies and that employees must adhere to the prison administrative directives. *Id.* at 16 at (¶ 38). Lieutenant Trumell responded rudely by advising Plaintiff that he was not a Garner employee, that strip searches are conducted for any type of visit, and that he better strip or he would be sent to segregation. *Id.* (¶ 39).

Plaintiff was intimidated and fearful he would be assaulted, and so he started to comply with the demand to strip. *Id.* (¶ 40). He was then locked in the secluded room that had no cameras with Officer Devost. *Id.* (¶ 41).

Plaintiff heard Lieutenant Trumell yell for Devost to have Plaintiff remove his socks. *Id.* at 17 (¶ 42). Plaintiff contends that Lieutenant Trumell sought to dehumanize him by having him stand barefoot on a "filthy" floor. *Id.*

Officer Devost acted to humiliate Plaintiff by requesting that he spread his buttocks and cough. *Id.* (¶ 43). Plaintiff advised that he would not permit Devost to violate him in anyway and would report and write Devost up. *Id.* (¶ 43). Plaintiff later explained the provisions of Directive 6.7 again and got dressed as quickly as possible. *Id.* (¶¶ 44-45). Plaintiff claims that Devost made sexually suggestive comments. *Id.* (¶ 46). Devost advised Plaintiff that he should have "just stripp[ed]" for him rather than having him call his supervisors. *Id.* at 18 (¶ 46). Plaintiff claims that this statement indicates that the strip search was motivated by personal rather than a safety and security reasons. *Id.*

Plaintiff reported this incident to other staff, made a report on the Prisoner Rape Elimination Act ("PREA") hotline, and contacted mental health staff for assistance with the mental stress of reliving childhood trauma. *Id.* at 19 (¶¶ 52-53).

Plaintiff claims he was transferred to another facility after he reported this incident and filed grievances about his unwarranted strip search. *Id.* at 21 (¶¶ 58-60). This transfer allegedly interfered with his participation in education and other programming. *Id.* (¶ 60). Prior to his transfer, Plaintiff was participating in a college program held at Garner and had earned 33.5 credits toward an Associate Degree in Business Administration. *Id.* (¶ 59). Plaintiff also worked

in the prison chapel for three years at Garner, but he lost this job because of the transfer. *Id.* (¶¶ 59-60). He had never received any disciplinary sanctions during his four years of incarceration at Garner. *Id.* (¶ 59).

On May 9, 2024, Plaintiff was scheduled to have a legal call with his attorney. *Id.* at 23 (¶ 61). This call had to be placed by Unit Counselor Arnold, who made the call to the attorney and then transferred the call to another telephone inside of her office. *Id.* (¶¶ 61-63). When Plaintiff asked Counselor Arnold for some privacy while he spoke with his attorney, she replied that she did not have to leave her office and refused to remove herself from listening range in accordance with DOC Directive 10.7 and Connecticut General Statute § 18-81-46. *Id.* (¶ 64). She made Plaintiff use the telephone in an unsecure area of the Alpha Unit recreation room during the inmate recreation period. *Id.* (¶ 66). Plaintiff's attorney became concerned when he heard other people talking in the background. *Id.* at 24 (¶ 69). Plaintiff alleges that Counselor Arnold has continued to deny him the ability to have private telephone calls with his attorney. *Id.* (¶ 70).

Plaintiff reported Counselor Arnold's conduct to Unit Manager Verrastro, but she has failed to take any corrective action to protect Plaintiff's right to have private telephone calls with his attorney. *Id.* at 26 (¶¶ 72-73). She continues to permit Plaintiff to be forced to conduct his telephone calls with his counsel in public areas. *Id.* (¶¶ 74-75).

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a government entity or government actors and dismiss any portion that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. In reviewing a *pro se* complaint, the

Court must construe the allegations liberally, interpreting them to raise the strongest arguments they suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).[4] However, a *pro se* complaint must still allege enough facts—as distinct from legal conclusions—to establish plausible grounds for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

### Fourth Amendment

Plaintiff asserts that the conduct described above violated his rights under the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In the prison context, the Fourth Amendment proscribes unreasonable strip searches. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Harris v. Miller*, 818 F.3d 49, 58 n.2 (2d Cir. 2016). The following four factors are considered when deciding whether a prison search was unreasonable: "(1) the scope of the intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted." *Harris*, 818 F.3d at 58 (quoting *Bell*, 441 U.S. at 559). A strip search violates the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (collecting cases), *aff'd*, 461 Fed. App'x 18 (2d Cir. 2012).

---

[4] Unless otherwise noted and for ease of reading, this ruling omits all internal quotations, alterations, and derivative citations for all quotations from cases.

Officers are also liable when they fail to intervene to stop a constitutional violation by another officer when in a position to observe the conduct and with time to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.").

Plaintiff's allegations indicate that Defendants Devost, Rickett, Trumell and Verrastro subjected him to an unwarranted strip search after a noncontact visit. *See* Doc. #1. For purposes of initial review, Plaintiff has sufficiently alleged facts to suggest that these Defendants subjected him to an unreasonable search in violation of the Fourth Amendment. *See Bragdon v. Baccus*, 2020 WL 2113606, at *3 (D. Conn. 2020) (permitting inmate to proceed on Fourth Amendment claim where he alleged that he was strip searched although he had done nothing wrong).

**Eighth Amendment**

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments." U.S. Const. amend VIII. Construed liberally, Plaintiff's complaint asserts claims of sexual abuse and deliberate indifference in violation of the Eighth Amendment.

1. Sexual Abuse

In *Boddie v. Schneider*, 105 F.3d 857 (2d Cir. 1997), the Second Circuit ruled that "sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Id.* at 860-61; *see also Crawford v. Cuomo*, 796 F.3d 252, 254 (2d Cir. 2015) ("A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken

with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth

Amendment."). To prevail on a claim for an Eighth Amendment violation, a prisoner must

demonstrate that a defendant acted with a sufficiently culpable state of mind, and that the

conduct was objectively harmful enough or sufficiently serious to reach constitutional

dimensions. *See Crawford*, 796 F.3d at 256. "In determining whether an Eighth Amendment

violation has occurred, the principal inquiry is whether the contact is incidental to legitimate

official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is

undertaken to arouse or gratify the officer or humiliate the inmate." *Id*. at 257-58.

For initial pleading purposes, Plaintiff's allegations—that Defendants subjected him to an

unnecessary and humiliating strip search causing him mental distress—suffice to state an Eighth

Amendment claim against Devost, Rickett, Trumell and Verrastro in their individual capacities.

Deliberate Indifference

Because Plaintiff alleges that Defendants Devost, Rickett, Trumell and Verrastro

intentionally caused harm to his mental health, *see* Doc. #1 at 18 (¶ 47), the Complaint might

also be construed to assert a claim of deliberate indifference to his safety and mental health.

The Supreme Court has long recognized that prison officials violate the Eighth

Amendment if they are deliberately indifferent to the serious medical needs of a sentenced

prisoner. *See Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (citing *Estelle v. Gamble*,

429 U.S. 97, 104 (1976)). The prisoner must show that "(1) objectively, the alleged deprivation

of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed

to act 'while actually aware of a substantial risk that serious inmate harm will result.'"

*Washington v. Artus*, 708 Fed. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467

F.3d 263, 279-80 (2d Cir. 2006)). It is not enough to allege medical malpractice unless the malpractice involves culpable recklessness—actions that evince a conscious disregard of a substantial risk of serious harm. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). To be "sufficiently serious," the deprivation of medical care must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hill*, 657 F.3d at 122. This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280. Factors to consider include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702.

An inmate seeking to establish an Eighth Amendment violation for deliberate indifference to safety "must prove (1) that [the prisoner] is incarcerated under conditions posing a substantial risk of serious harm, and (2) that the prison official had a sufficiently culpable state of mind, which in prison-conditions cases is one of deliberate indifference to inmate health or safety." *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).

In both instances, the prisoner must allege facts to suggest that the defendant prison officials acted with an actual awareness of a substantial risk that serious harm to the inmate would result. *See Morgan*, 956 F.3d at 89. The official must have acted more than merely negligently and instead with a subjective state of mind that is the equivalent of criminal recklessness. *See Edwards v. Black*, 854 Fed. App'x 382, 383 (2d Cir. 2021). But "[o]fficials

10

need only be aware of the risk of harm, not intend harm. And awareness may be proven from the very fact that the risk was obvious." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013).

Plaintiff alleges that he had to contact mental health staff for assistance with the mental stress of reliving childhood trauma as a result of being subjected to a strip search by Devost, Rickett, Trumell or Verrastro. *Id.* at 19 (¶ 52-53). For purposes of initial review, the Court assumes that Plaintiff suffered a serious harm to his mental health. To the extent they conducted an unwarranted strip search for non-penological purposes, Defendants are plausibly alleged to have been aware of the obvious risk of harm to the inmate's safety and mental health. Thus, Plaintiff may proceed on his claims for damages arising from deliberate indifference to his safety and to his mental health against Devost, Rickett, Trumell or Verrastro for further development of the record.

### First Amendment Retaliation

"To sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Bacon v. Phelps*, 961 F.3d 533, 542 (2d Cir. 2020). An adverse action is one that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Benway v. Aldi*, 2020 WL 4433561, at *4 (D. Conn. 2020) (quoting *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012)). Courts "'must approach prisoner claims of retaliation with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise

11

not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Bacon*, 961 F.3d at 542-43 (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001)).

The filing of a prison grievance constitutes protected activity for purposes of stating a retaliation cause of action. *See Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019); *Lewis v. Stango*, 2023 WL 4684666, at *5 (D. Conn. 2023). Thus, the grievances filed by Plaintiff about his unwarranted strip search satisfy this first element.

An "adverse action," as required by the second element, has been understood as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004). Plaintiff alleges that he sustained a retaliatory transfer that resulted in his losing his prison job and interference with his ability to participate in educational and other prison programming. An inmate's transfer to another prison facility—even to a prison facility with comparable conditions—can rise to the level of an adverse action for purposes of a First Amendment retaliation claim. *See Smith v. Levine*, 510 F. App'x 17, 21 (2d Cir. 2013) (summary order) (collecting cases). Thus, Plaintiff's allegations satisfy the second element of the retaliation analysis.

But Plaintiff's complaint fails to allege facts to satisfy the requisite causal connection between the protected activity and the transfer. Plaintiff is required to allege facts "suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against him." *Lewis v. Stango*, 2023 WL 4684666, at *6 (D. Conn. 2023). "Some of the facts often used to determine retaliatory motive include (1) temporal proximity between

the protected conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record, (3) a finding of not guilty at the disciplinary hearing, and (4) statements by the officials showing motivation." *Ramos v. Semple*, 2019 WL 2422875, at *2 (D. Conn. 2019).

No alleged facts support his claim that any defendant was motivated by his protected activity to take the alleged adverse action against him. A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."); *see also Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability"). Plaintiff has not described how any individual named as a defendant was involved in the decision to transfer him to a different facility. Thus, absent allegations to suggest any named defendant was involved with retaliatory action taken against Plaintiff because of his protected activity, Plaintiff's claim of First Amendment retaliation rests only on his conclusory assertion that Defendants retaliated against him. Consistent with the Second Circuit instruction to approach retaliation claims with some measure of skepticism, Plaintiff cannot proceed on a "wholly conclusory" claim that Defendants retaliated against him. Thus, Plaintiff's claim of First Amendment retaliation is dismissed under 28 U.S.C. § 1915A(b)(1).

**Fourteenth Amendment Equal Protection**

Plaintiff claims that Defendants Trumell, Verrastro, Devost and Rickett violated his Fourteenth Amendment right to equal protection by subjecting him to a strip search after a video

visit. Doc. #1. at 27 (¶ 1). He asserts that inmates at other DOC facilities are not subjected to a strip search after a video visit. *Id.* (¶ 2).

A successful equal protection claim requires a plaintiff to "allege facts showing that the plaintiff was treated differently from similarly situated individuals and that the reason for the different treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Morgan v. Semple*, 2020 WL 2198117, at *19 (D. Conn. 2020) (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)).

Absent a suspect classification, a plaintiff may proceed under a "class of one" theory by "alleg[ing] that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Plaintiff has not alleged membership in a suspect class for the purposes of his equal protection claims because "prisoners in general are not a suspect class." *Rahim v. Martin*, 2023 WL 4745536, at *7 (D. Conn. 2023) (citing *Graziano v. Pataki*, 689 F.3d 110, 117 (2d Cir. 2012)). Nor has he alleged a successful equal protection claim under a "class of one" theory of discrimination. To succeed on this theory, Plaintiff "must demonstrate the existence of a 'comparator'—someone who is 'prima facie identical'—who was treated differently." *Williams v. Mulligan*, 2023 WL 8258913, at *8 (D. Conn. 2023). But Plaintiff has not identified any such comparator to support an inference of an equal protection violation. Accordingly, Plaintiff's

claims of Fourteenth Amendment equal protection violation are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Interference with Legal Communications**

Plaintiff alleges that he was denied the right to confer in private with his attorney. The Court construes Plaintiff's complaint as attempting to raise plausible claims under the Sixth and Fourth Amendments or perhaps a violation of his right to court access.

1.  Sixth Amendment

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend VI; *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). Under the Sixth Amendment, a criminal defendant is constitutionally entitled to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The Sixth Amendment right to effective assistance of counsel "only applies to a defendant's trial and first appeal as of right, not to appeals afforded on a discretionary basis, collateral proceedings, or civil proceedings such as civil rights claims which challenge prison conditions." *Bourdon v. Loughren,* 386 F.3d 88, 96 (2d Cir. 2004) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555-57 (1987)); *see also Wolff v. McDonnell*, 418 U.S. 539, 576 (1974) (rejecting application of Sixth Amendment to a claim that "would insulate all mail from inspection, whether related to civil or criminal matters").

In the specific context of a criminal defendant inmate's access to counsel, the Second Circuit has concluded that a restriction on a criminal defendant's contact with his or her attorney is "unconstitutional where [the] restriction unreasonably burdened the inmate's opportunity to consult with his [or her] attorney and to prepare his defense." *Benjamin v. Fraser*, 264 F.3d 175,

187 (2d Cir. 2001) (quotation and citation omitted). "Examples of unconstitutional limits on prisoners' rights to counsel include a ban on all visits by paralegals employed by criminal defense counsel and repeated delays in meetings between prisoners and attorneys that resulted in attorneys forgoing the meetings." *Schick v. Apker*, 2009 WL 2016926, at *2 (S.D.N.Y. 2009) (citing *Smith v. Coughlin*, 784 F.2d 175, 187 (2d Cir. 1984) and *Benjamin*, 264 F.3d at 187). However, "states have no obligation to provide the best manner of access to counsel" and "restrictions on inmates' access to counsel via the telephone may be permitted as long as prisoners have some manner of access to counsel." *Bellamy v. McMickens*, 692 F. Supp. 205, 214 (S.D.N.Y. 1988). Thus, a denial of one method of communicating with an attorney does not give rise to a constitutional violation if the inmate plaintiff has another means of communicating with counsel. *See Lowery v. Westchester Cnty. Dep't of Correction*, 2017 WL 564674, at *3-*4 (S.D.N.Y. 2017).

Plaintiff does not allege that he was speaking with his attorney on May 9, 2024 regarding a criminal trial or first appeal.[5] *See* Doc. #1 at 23. Even if he was conferring with an attorney for a criminal trial or first appeal, Plaintiff has not alleged facts to support an inference that he was subjected to conditions that denied him any opportunity to confer privately with his attorney and to prepare his defense. Plaintiff does not allege that defendants have stopped his attorney from visiting him or sending him legal mail concerning his case. *See Groenow v. Williams*, 2014 WL 941276, at *7 (S.D.N.Y. 2014) ("Because Groenow has not alleged that he was denied all opportunities to consult confidentially with his attorney, he has not plausibly alleged a Sixth Amendment violation" even though "monitoring telephone calls with his attorney most likely

---

[5] And it seems unlikely in any event insofar as Plaintiff was sentenced in 2015.

had a chilling effect on Groenow's ability to communicate effectively with his attorney.");

*Schick*, 2009 WL 2016926, at *2 (prison officials' refusal to grant plaintiff's request for an unmonitored call with his criminal appellate attorney on three occasions "did not 'unreasonably burden' his opportunity to consult with counsel and to prepare his appeal" where plaintiff had other means of access to his attorneys). Accordingly, Plaintiff has not alleged a plausible Sixth Amendment violation.

    2.  <u>Fourth Amendment</u>

The Fourth Amendment protects "'against unreasonable searches and seizures,' including the monitoring of oral statements." *Goode v. Faraci*, 2018 WL 10158673, at *3 (D. Conn. 2018) (quoting *Katz v. United States*, 389 U.S. 347, 353 (1967)). To determine whether Fourth Amendment violation is at issue, a court "must decide (1) whether the claimant had an actual or subjective expectation of privacy and (2) whether that expectation is one that society recognizes as reasonable." *Id.* (citing *Katz*, 389 U.S. at 361).

The Court recognizes that inmates have limited reasonable expectations of privacy in prisons because of their confinement status. *See Hudson v. Palmer*, 468 U.S. 517, 524-30 (1984) (stating that loss of privacy is inherent incidence of confinement). Nonetheless, courts have held that non-consensual monitoring of a prisoner's telephone call with legal counsel may amount to a violation of the Fourth Amendment. *See Petitpas v. Martin*, 2017 WL 4812038, at *2 (D. Conn. 2017) (citing *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 433-39 (E.D.N.Y. 2006); *In re State Police Litig.*, 888 F. Supp. 1235, 1255-56 (D. Conn. 1995); *but see United States v. Lentz*, 419 F. Supp. 2d 820, 827-29 (E.D. Va. 2005) (no attorney-client privilege if prisoner knows conversation is being recorded)). Relevant to Plaintiff's complaint, this Court has previously determined for

purposes of qualified immunity that a prisoner did not have a clearly established right to speak with an attorney in a private room free from prison officials who could overhear his conversation with a "naked ear." *Goode*, 2018 WL 10158673, at *4. The allegations here are appropriate for further development of the record. Therefore, Plaintiff's Fourth Amendment claim may proceed against Defendants Arnold and Verrastro.

     3.  <u>Access to the Courts</u>[6]

     Plaintiff may also be asserting that his right to court access was burdened by lack of privacy during his legal calls. It is well established that inmates have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Miller v. Semple*, 2019 WL 6307535, at *4 (D. Conn. 2019) ("Prisoners have a constitutional right of access to the courts that may not be unreasonably obstructed by the actions of prison officials."). To state a claim for denial of access to the courts, a plaintiff must demonstrate that he suffered an actual injury, *see Lewis*, 518 U.S. at 351-53—that is, he must allege that "defendant's conduct deprived him of an opportunity to press some nonfrivolous, arguable cause of action in court," *Baker v. Weir*, 2016 WL 7441064, at *2 (D. Conn. 2016) (quoting *Brown v. Choinski*, 2011 WL 1106232, at *5 (D. Conn. 2011)). What this means is "that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation," and "the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a

---

[6] The right of access to the courts may arise under the Privileges and Immunities Clause of Article IV, section 2, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendment Due Process Clauses, and the Equal Protection Clause of the Fourteenth Amendment. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002).

defendant." *Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002). A plaintiff must describe "the predicate claim . . . well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 416. In this manner, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id.* at 417-18.

Here, Plaintiff has not alleged a plausible claim for violation of his right of access to the courts. He has not alleged facts to describe any past or present legal claim or defense that has been thwarted by any defendant's actions; nor has he alleged facts to support a claim "that any such actions are or were arguably meritorious and not frivolous." *See Mitchell v. Martin*, 2023 WL 8114344, at *4 (D. Conn. 2023). For these reasons, any claim that Plaintiff was denied access to the courts is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Fifth Amendment**

Plaintiff asserts that Defendants Arnold and Verrastro violated his Fifth Amendment rights. Doc. #1 at 27 (¶ 2). The Fifth Amendment pertains to criminal charges and prohibits the federal government from violating a person's due process rights. *See Pub. Utils. Comm'n v. Pollak*, 343 U.S. 451, 461 (1952); *Birdsall v. City of Hartford*, 249 F. Supp. 2d 163, 170 (D. Conn. 2003). As it applies only to the actions of the federal government, the Fifth Amendment Due Process Clause applies only to federal inmates. *See Jackson v. Walker*, 2022 WL 16573562, at *3 (D. Conn. 2022) (citing *Caiozzo v. Koreman*, 581 F.3d 63, 69 & n.3 (2d Cir. 2009)). Plaintiff is a state inmate and has not alleged facts to support a claim under the Fifth

Amendment. Thus, any Fifth Amendment claim is dismissed pursuant to 28 U.S.C.

§ 1915A(b)(1).

### Violation of DOC Policies

Plaintiff asserts that defendants violated DOC policies and directives. But "allegations

that a prison official violated the procedures set forth in an Administrative Directive or other

policy do not state a claim of a violation of an inmate's constitutional rights." *Rosa v. Cook*,

2022 WL 7517256, at *5 (D. Conn. 2022). Accordingly, any claim that defendants violated DOC

policies or directives is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## ORDERS

The Court enters the following orders:

(1) The case shall proceed on Plaintiff's individual capacity claims for damages based on:

(1) Fourth Amendment violation arising from his strip search against Officer Devost, Officer

Rickett, Lieutenant Trumell, and Unit Manager Verrastro; (2) Eighth Amendment sexual abuse

against Devost, Rickett, Trumell, and Verrastro; (3) Eighth Amendment deliberate indifference

to his safety and to his mental health against Devost, Rickett, Trumell, and Verrastro; and (4)

Fourth Amendment violation against Counselor Arnold and Verrastro. Plaintiff's state law

claims may also proceed at this time.

If Plaintiff believes he can allege facts to cure the deficiencies identified in this ruling, he

may file a **motion to amend and attach an amended complaint** on or before March 5, 2025.

An amended complaint, if filed, will completely replace the complaint, and the Court will not

consider any allegations made in the original complaint in evaluating any amended complaint.

(2) The clerk shall verify the current work addresses for Officer Devost, Officer Rickett,

Lieutenant Trumell, Unit Manager Verrastro, and Counselor Arnold with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses on or before February 24, 2025, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs. The clerk shall send a courtesy copy of the complaint and this Order to AAG Terrence O'Neill by email.

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by August 4, 2025. Discovery requests shall not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed by September 3, 2025.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive

motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the Court. **Failure to do so can result in the dismissal of the case.** The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

Dated at Bridgeport, Connecticut this 3rd day of February 2025.

_____
Kari A. Dooley
United States District Judge